**UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF WASHINGTON**

**SEATTLE DIVISION**

| | |
|---|---|
| DEREK WATSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>J.B. HUNT TRANSPORT, INC., an Arkansas corporation,<br><br>Defendant. | Case No.<br><br>**NOTICE OF REMOVAL**<br><br>[CLERK'S ACTION REQUIRED] |

**TO: CLERK OF THE COURT**

**AND TO: PLAINTIFF DEREK WATSON; and HIS ATTORNEYS OF RECORD**

PLEASE TAKE NOTICE that Defendant J.B. Hunt Transport, Inc. ("J.B. Hunt") hereby removes this action from the Pierce County Superior Court to the United States District Court for the Western District of Washington under 28 U.S.C. §§ 1332, 1441, 1446, and 1453, because minimal diversity exists under the Class Action Fairness Act ("CAFA"), there are over 100 members in the putative class, and the amount in controversy exceeds five million dollars ($5,000,000.00).

J.B. Hunt denies Plaintiff Derek Watson's allegations and denies that Plaintiff or any class



OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

member is entitled to any relief whatsoever, and files this Notice without waiving any defense. J.B. Hunt reserves the right to present evidence to support the allegations in this Notice if the Court's jurisdiction is questioned.

This Notice of Removal is supported by the Verification of State Court Records in Support of Notice of Removal to Federal Court ("Verification"), a true and accurate copy of the Class Action Complaint attached as Exhibit 1, and J.B. Hunt's statements of facts and arguments below.

## I. BACKGROUND

1. On February 17, 2026, Plaintiff filed a Class Action Complaint in the Superior Court for the State of Washington, County of Pierce, entitled *Derek Watson v. J.B. Hunt, Inc.*, Case No. 26-2-06562-0 (Pierce County Superior Court) (hereafter, the "State Court Action"). Ex. 1.

2. The Complaint filed in the State Court action purports to bring claims on behalf of the following putative class:

> All hourly-paid or non-exempt employees of Defendant in the State of Washington at any time during the period from three years preceding the filing of this Complaint to final disposition of this action.

Ex. 1, ¶ 4.1.

3. On March 4, 2026, Plaintiff served J.B. Hunt's registered agent with a copy of the Summons and Complaint in the State Court Action. Verification ¶¶ 1-2.

4. On behalf of himself and the Class, Plaintiff seeks to recover compensatory and exemplary damages arising from J.B. Hunt's allegedly noncompliant provision of rest breaks, overtime, unlawful withholding and deductions, and paid sick leave. Ex. 1, ¶¶ 1.1-1.2. Additionally, the Complaint seeks a statutory award of attorneys' fees under RCW 49.48.030, 49.52.070, and 49.46.090, double damages under 49.52.070, pre- and post-judgment interest, injunctive, and declaratory relief. *Id.* at §§VI - XIV.

## II. VERIFICATION OF STATE COURT RECORDS

5. In accordance with 28 U.S.C. § 1446(a), a true and correct copy of the Plaintiff's



OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

Class Action Complaint ("Complaint") is attached as Exhibit 1 to this Notice of Removal and as Exhibit 1 to the Verification, at ¶ 2.

6. Exhibits 1-7 to the Verification constitute all of the process, pleadings, and orders either served upon J.B. Hunt or filed by any party in this action. No further proceedings have been had in the state court as of the date of J.B. Hunt's Notice of Removal.

## III. VENUE

7. As noted, this case was originally filed in the Superior Court for the State of Washington, Pierce County, which makes venue proper in the United States District Court for the Western District of Washington. *See* 28 U.S.C. § 128(b); 28 U.S.C. § 1441(a).

## IV. REMOVAL IS TIMELY

8. The time to remove under 28 U.S.C. section 1446(b) does not begin to run until receipt by the defendant, through service or otherwise, of a pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable. *Harris v. Bankers Life & Cas. Co*., 425 F.3d 689, 694 (9th Cir. 2005). J.B. Hunt is not obligated to investigate or develop additional facts as to removability upon receipt of the Complaint. *Id.* ("[N]otice of removability... is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry" by Defendant.).

9. The Ninth Circuit has repeatedly upheld the *Harris* decision in subsequent cases. In *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136 (9th Cir. 2013), the Ninth Circuit emphasized that defendants are not "saddl[ed] with the burden of investigating jurisdictional facts" as to removability. In *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013), the Court explained that when defendants do conduct such an investigation, 28 U.S.C. §§ 1441 and 1446, "read together, permit a defendant to remove outside the two thirty-day periods on the basis of its own information." Any argument that a defendant could have removed a case earlier based on information contained within its own records fails.



OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

10. Here, the four corners of the Complaint do not provide readily ascertainable grounds for removal. The Complaint does not allege sufficient facts to calculate the amount in controversy with reasonable certainty as to Plaintiff or as to the putative class. The Complaint does not provide an estimate as to the number of putative class members, their average hourly rate of pay, the frequency of alleged violations of Washington law, nor estimates as to Plaintiff's own experiences. *See generally* Ex. 1. Accordingly, the time to remove has not yet begun, and J.B. Hunt may remove based upon its own investigation. *Harris*, 425 F.3d at 694. J.B. Hunt's removal is timely.

## V. THIS COURT HAS SUBJECT-MATTER JURISDICTION UNDER CAFA

11. This lawsuit is a putative class action. Removal under CAFA is proper under 28 U.S.C. §§ 1441, 1446, and 1453 because (1) minimal diversity of citizenship exists between J.B. Hunt and Plaintiff; (2) there are over 100 members in the putative Class; and (3) the Complaint places in controversy more than $5 million, excluding interest and costs. 28 U.S.C. §§ 1332(d)(2), (d)(5)(b), 1453. J.B. Hunt denies the allegations of the Complaint, denies that Plaintiff or putative class members are entitled to any relief whatsoever, and denies that the action meets the requirements of a class action. However, based on the allegations in the Complaint and the preliminary investigation into the class allegations, all CAFA jurisdictional requirements are met here.

### A. Minimal Diversity of Citizenship Exists Between J.B. Hunt and Plaintiff.

12. To establish CAFA's diversity requirement, a party seeking removal must establish only that minimal diversity exists; that is, that one putative class member is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2). *See also United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090–91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).



OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

13. Minimal diversity exists under 28 U.S.C. § 1332(d)(2) because Plaintiff and J.B. Hunt are citizens of different states.

**1. Plaintiff is a Citizen of Washington State.**

14. "An individual is a citizen of the state in which he is domiciled." *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co*., 265 F.3d 853, 857 (9th Cir. 2001)). For purposes of diversity jurisdiction, Citizenship is determined by an individual's domicile when the suit was filed. *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986). Domicile is determined by a person's 1) state of residence, and 2) intent to remain or return. *Adams v. W. Marine Prods.*, 958 F.3d 1216, 1221 (9th Cir. 2020) (person's residence constitutes some evidence of domicile). "A party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change." *Id.* (internal quotation omitted).

15. In the Complaint, Plaintiff alleges he "is a resident of Washington" and J.B. Hunt "hired Plaintiff as an hourly-paid or non-exempt employee during the relevant time period." Ex. 1, ¶ 3.1.

16. Plaintiff's residence and employment in Washington create the presumption of Washington domicile, and he is, therefore, a citizen of the State of Washington for removal purposes. *See State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994) (citing *Lew*, 797 F.2d at 751).

**2. J.B. Hunt is not a Citizen of Washington State.**

17. A corporation is a "citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). J.B. Hunt was incorporated in Georgia, and has its principal place of business in Lowell, Arkansas, where its corporate headquarters are located. Therefore, J.B. Hunt is a citizen of Georgia and Arkansas.



OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

18. As Plaintiff and J.B. Hunt are citizens of different states, the parties meet the diversity requirement under CAFA.

**B. Putative Class Membership Exceeds 100 Individuals.**

19. Plaintiff defines the Class to include all current and former hourly-paid or non-exempt J.B. Hunt employees who worked in Washington from February 26, 2023, through the final disposition of this action. Ex. 1, ¶ 4.1. J.B. Hunt reserves the right to oppose class certification and to dispute Plaintiff's class definition. Based on the Class definition, however, a preliminary examination suggests the putative Class includes more than 100 current and former non-exempt or hourly-paid J.B. Hunt employees who worked in Washington during the putative class period. Accordingly, the putative Class contains more than 100 members.

**C. The Amount in Controversy Exceeds $5 Million.**

20. Claims of individual members in a class action are aggregated to determine if the amount in controversy exceeds $5 million, exclusive of interest and costs for CAFA jurisdiction. 28 U.S.C. § 1332(d)(6).

21. A notice of removal need only show "a short and plain statement of the grounds for removal." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 83 (2014). The "defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 89. "[D]efendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional threshold has been met." *Id.* at 89–90. There is no presumption against removal in cases invoking CAFA because Congress intended to "facilitate adjudication of certain class actions in federal court." *Id.* at 87. Instead, "CAFA should be read with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Bridewell-Sledge v. Blue Cross*, 798 F.3d 923, 929 (9th Cir. 2015) (internal quotations omitted).



OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

22. Where, as here, Plaintiff has not pled any amount of damages he seeks through his Complaint, the Court can consider facts beyond the Complaint to determine whether the lawsuit meets the jurisdictional requirement.[1] *See Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 690 (9th Cir. 2006) (citing *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). The burden of showing the amount-in-controversy meets the federal jurisdictional threshold "is not a daunting one. . . [A] removing defendant is not obligated to completely 'research, state, and prove the plaintiff's claims for damages.'" *54-40 Brewing Co. LLC v. Truck Ins. Exch.*, No. C21-5586, 2021 WL 6124788, at *2 (W.D. Wash. Dec. 28, 2021).

23. Moreover, in assessing whether the amount in controversy requirement has been satisfied, "a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)). Indeed, the focus of the Court's inquiry must be on "what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (citing *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)).

24. Here, Plaintiff alleges that J.B. Hunt has "engaged in a common course" of practices and policies that resulted in wage and hour violations. Ex. 1 § V. A "common course" is commonly understood to refer to actions "occurring, found, or done often; prevalent among the members of a society; usual, frequent" or the "routine or established procedure; the usual way or

---

[1] This Notice of Removal only addresses the nature and amount of damages the Complaint places in controversy. J.B. Hunt refers to damages and comparable cases only for the purpose of showing that the amount in controversy exceeds the jurisdictional minimum. J.B. Hunt denies that Plaintiff's claims and the claims of any potential class member have merit and denies that any class member is entitled to any relief whatsoever and further denies that the action is appropriate for class certification. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendant's] liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).



OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

custom." Oxford English Dictionary, "common" "course (n.1 & adv.1)," September 2025, https://doi.org/10.1093/OED/9705514042.

25. Consequently, it is reasonable for J.B. Hunt to assume up to a 100% violation rate for each of Plaintiff's claims for removal purposes. *See e.g. Lewis*, 627 F.3d at 398-401; *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014) (per curiam); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (holding where plaintiff did not submit any evidence as to violation rates, "assumption of a 100 percent violation rate may have been reasonable based on the allegations in the Complaint," which "offered no guidance as to the frequency of the alleged violations, only that [d]efendant had 'a policy and practice' of meal and rest period violations"); *Lopez v. Aerotek, Inc.*, No. SACV 14-00803-(CJGx), 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015) (finding "Aerotek could have logically assumed a 100 percent violation rate because Plaintiff does not qualify his allegations" and "[a]lthough afforded the opportunity to do so on this motion, Plaintiff does not assert or suggest an alternative violation rate on which the Court should rely"); *Perez v. Rose Hills Co.*, 131 F.4th 804 (9th Cir. 2025) (approving a violation rate of one hour of minimum wage, one hour of overtime, one meal period violation and one rest period violation every week of the class period was reasonable based upon allegations in the Complaint that violations occurred "at times" and consistent with the employer's "pattern and practice").

26. Although J.B. Hunt denies Plaintiff's claims have any merit, whatsoever, solely for the purposes of meeting the jurisdictional requirements for removal, if Plaintiff were to prevail on just his First Claim for Relief ("Rest Break Claim"), his Second Claim for Relief ("Meal Period Claim"), his Eighth Claim for Relief ("Willfulness Claim") on behalf of the putative class, and claim for attorney fees, the requested monetary recovery would comfortably exceed CAFA's monetary threshold. Because the amounts in controversy for these claims alone exceed the jurisdictional minimum requirement of $5 million, J.B. Hunt does not include additional analyses for estimates of the amounts placed in controversy by Plaintiff's remaining claims.



OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

### 1. Plaintiff's Rest Break Claim Places at Least $866,100 to $1,299,150 in Controversy.

27. Plaintiff has not specified the amount in controversy. Instead, Plaintiff alleges J.B. Hunt had a policy and practice of failing to provide Washington-compliant rest breaks in a "common course." Ex 1 ¶¶ 5.2 – 5.8; § VI. The Complaint does not specify how often Plaintiff and the putative class members were allegedly denied rest breaks.

28. For purposes of this jurisdictional analysis only, then, J.B. Hunt relies on Plaintiff's allegation that violations occurred in a "common course" and compensation is owed. *Lewis*, 627 F.3d at 399 ("[I]n determining the amount [in controversy], we first look to the complaint."); *Heejin Lim v. Helio, LLC*, No. CV 11-9183 PSG (PLAx), 2012 WL 359304, at *2 (C.D. Cal. Feb. 2, 2012) ("The ultimate inquiry is, therefore, what amount is put 'in controversy' by the plaintiff's complaint or other papers, not what the defendant will actually owe for the actual number of violations that occurred, if any.") (internal citations omitted).

29. As the Complaint does not include any allegations limiting the number of alleged rest period violations, J.B. Hunt may assume a 100% violation rate. *Lewis*, 627 F.3d at 398-401; *Rea*, 742 F.3d at 1239; *Bryant*, 284 F. Supp. 3d at 1151; *see also Stevenson v. Dollar Tree Stores, Inc.*, No. CIV S-11-1433 KJM DAD, 2011 WL 4928753, at *3-4 (E.D. Cal. Oct. 17, 2011) (defendant's calculation of potential missed meal period damages at 100% of the shifts was appropriate where plaintiff alleged that class members were routinely denied meal periods or were not compensated for meal periods). However, J.B. Hunt need not assume 100% violation rates to satisfy the CAFA threshold.

30. Per WAC 296-126-092(4), "Employees shall be allowed a rest period of not less than ten minutes, on the employer's time, for each four hours of working time. Rest periods shall be scheduled as near as possible to the midpoint of the work period. No employee shall be required to work more than three hours without a rest period."



OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

31. J.B. Hunt conducted a preliminary review of its employment records during the putative Class period and has identified that employees worked more than 90,000 workweeks during this period.

32. Based on a cursory review of its records, it appears that Plaintiff typically worked at least 8-hour shifts, five days each workweek. Plaintiff's hourly rate of pay during his employment was $28.87 per hour.

33. For purposes of removal only, J.B. Hunt conservatively assumes 8-hour shifts, five days each workweek at a rate of $28.87 per hour when calculating the amount in controversy arising from Plaintiff's wage claims.

34. J.B. Hunt assumes, for removal purposes only, that employees receiving non-compliant rest breaks are entitled to 20 minutes of wages per day (assuming an 8-hour shift).

35. Thus, at a 100% violation rate, the amount in controversy for the Rest Break Claim alone is $4,330,500 (minimum wage divided by 60, multiplied by 20 ($9.62), multiplied by 5 ($48.12), and then multiplied again by the total number of workweeks). Assuming more conservative violation rates of 20% - 30%, the amount placed in controversy by the Rest Break Claim is $866,100 to $1,299,150.

36. Courts have permitted a much higher assumption of up to 60% violation rates when complaints allege a company-wide practice of failing to provide compliant rest breaks, along with no allegations concerning the frequency of the violations. *See Sanchez v. Abbott Labs.*, No. 2:20-cv-01436-TLN-AC, 2021 WL 2679057 at *4-5 (E.D. Cal. Jun. 30, 2021) (finding 60% violation rate for meal and rest break claims to be appropriate based on complaint's "pattern and practice" allegation that resulted in unpaid meal and rest period premiums to some "but not all" class members); *Bryant*, 284 F. Supp. 3d at 1151 (holding complaint alleging policy and practice of meal and rest period violations with no guidance as to frequency justifies estimate of at least three missed meal periods and three missed rest periods per week and up to five missed meal periods and five missed rest periods per week); *Stanley v. Distrib. Alts., Inc.*, No. EDCV 17-2173 AG


OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

(KKs) 2017 WL 6209822 at *2 (C.D. Cal. Dec. 7, 2017) (finding assumption of three violations per week reasonable where complaint alleged defendant "engaged in a 'pattern and practice' of wage and hour violations" but "provides almost no allegations concerning the frequency of the alleged violations, and [plaintiff] provides no competing evidence that would suggest lower violation rates"); *Navarro v. Servisair, LLC*, No. C 08-02716 MHP, 2008 WL 3842984, at *9 (N.D. Cal. Aug. 14, 2008) (assuming three weekly meal violations reasonable where plaintiff "[did] not limit his claim by stating that only a certain number of hours went uncompensated").

37. Therefore, J.B. Hunt's assumption of a 20% to 30% violation rate is reasonable as a matter of law. J.B. Hunt is not "required to comb through [their] records to identify and calculate the exact frequency of violations." *Rodriguez v. USF Reddaway, Inc.*, No. 2:21-cv-02270-TLN-DB, 2022 WL 3274345, at *5 (E.D. Cal. Aug. 11, 2022) (noting courts have found "violation rates of 25% to 60% can be reasonably assumed as a matter of law" based on policy and practice allegations). "[R]equiring Defendants to forecast an exact violation rate would essentially force a removing defendant to prove the plaintiff's case." *Thomas v. Aetna Health of Cal., Inc.*, No. 1:10-CV-01906-AWI, 2011 WL 2173715, at *20 (E.D. Cal. Jun. 2, 2011) (internal citations omitted).

**2. Plaintiff's Meal Period Claim Places at Least $1,299,150 to $1,948,725 in Controversy.**

38. Plaintiff has not specified an amount in controversy. *See generally* Ex. 1.

39. Plaintiff alleges J.B. Hunt had a policy and practice of failing to provide Washington-compliant meal periods in a "common course." Ex 1 ¶¶ 5.9 – 5.14; § VII. The Complaint does not specify how often Plaintiff and the putative class members were allegedly denied meal break periods.

40. For purposes of this jurisdictional analysis only, then, J.B. Hunt relies on Plaintiff's allegation that violations occurred in a "common course" and compensation is owed. *See Lewis,* 627 F.3d at 399.



OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

41. As the Complaint does not include any allegations limiting the number of alleged meal period violations, J.B. Hunt may assume a 100% violation rate. *Id.* at 398-401; *Rea*, 742 F.3d at 1239; *Bryant*, 284 F. Supp. 3d at 1151; *Stevenson,* 2011 WL 4928753, at *3-4. However, J.B. Hunt need not assume 100% violation rates to satisfy the CAFA threshold.

42. Per WAC 296-126-092, "(1) Employees shall be allowed a meal period of at least thirty minutes which commences no less than two hours nor more than five hours from the beginning of the shift. Meal periods shall be on the employer's time when the employee is required by the employer to remain on duty on the premises or at a prescribed work site in the interest of the employer. (2) No employee shall be required to work more than five consecutive hours without a meal period. (3) Employees working three or more hours longer than a normal work day shall be allowed at least one thirty-minute meal period prior to or during the overtime period."

43. J.B. Hunt relies on the information and assumptions related to hourly pay rate, typical shift length, and workweeks as previously stated in Section V(C)(i).

44. J.B. Hunt assumes, for removal purposes only, that employees receiving non-compliant meal periods are entitled to 30 minutes of wages per shift at their hourly rate of pay.

45. Accordingly, at a 100% violation rate, the amount in controversy for the Meal Period Claim alone is $6,495,750 (hourly rate divided by 60, multiplied by 30 ($14.44), multiplied by 5 ($72.18), and then multiplied again by the total number of workweeks). Even assuming more conservative violation rates of 20% - 30%, the amount placed in controversy by the Meal Period Claim alone is $1,299,150 to $1,948,725.

46. Courts have permitted a much higher assumption of up to 60% violation rates when complaints allege a company-wide practice of failing to provide compliant meal breaks, along with no allegations concerning the frequency of the violations. *See Sanchez*, 2021 WL 2679057 at *4-5 (finding 60% violation rate for meal and rest break claims to be appropriate based on complaint's "pattern and practice" allegation that resulted in unpaid meal and rest period premiums to some "but not all" class members); *Bryant*, 284 F. Supp. 3d at 1151 (holding complaint alleging policy


OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

and practice of meal and rest period violations with no guidance as to frequency justifies estimate of at least three missed meal periods and three missed rest periods per week and up to five missed meal periods and five missed rest periods per week); *Stanley*, 2017 WL 6209822 at *2 (finding assumption of three violations per week reasonable where complaint alleged defendant "engaged in a 'pattern and practice' of wage and hour violations" but "provides almost no allegations concerning the frequency of the alleged violations, and [plaintiff] provides no competing evidence that would suggest lower violation rates"); *Navarro*, 2008 WL 3842984, at *9 (assuming three weekly meal violations reasonable where plaintiff "[did] not limit his claim by stating that only a certain number of hours went uncompensated").

47. J.B. Hunt's assumption of a 20% to 30% violation rate is reasonable as a matter of law. *See Rodriguez*, 2022 WL 3274345, at *5 (noting courts have found "violation rates of 25% to 60% can be reasonably assumed as a matter of law" based on policy and practice allegations).

**3. Plaintiff's Claim that J.B. Hunt Violated RCW 49.52.050 Doubles the Amount in Controversy.**

48. Plaintiff alleges that J.B. Hunt "willfully" deprived the putative class of wages owed by violations of Washington's wage and hour laws, including failure to provide compliant rest and meal periods. *See* Ex 1, ¶¶ 13.3-13.4. Plaintiff alleges that such willfulness entitles him to double damages. *Id*. ¶13.4. Accordingly, Plaintiff's Rest Break and Meal Period Claims, when considered in combination with Plaintiff's allegation that these violations are willful, calculated at the most conservative wage and violation rates, place an additional $2,165,250 in controversy.

**4. Plaintiff's Claim for Attorneys' Fees Places at least $1,082,625, in Controversy.**

49. Courts have held that an award of attorneys' fees, if such fees are authorized under applicable law, should be considered for purposes of calculating the amount in controversy. *See McGraw v. GEICO Gen. Ins. Co.*, No. C16-5876, 2017 WL 1386085, at *3 (W.D. Wash. Apr. 18, 2017) (concluding "that, whether the [attorneys'] fees are authorized by contract, statute, or case


OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

law, they may be included in the amount in controversy"); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155–56 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."); *see also Kido v. Transamerica Life Ins. Co.*, No. C19-1858, 2020 WL 428978, at *3 (W.D. Wash. Jan. 28, 2020) (calculating attorneys' fees for inclusion in the amount in controversy); *Skau v. JBS Carriers, Inc.*, No. C18-681, 2018 WL 6804315, at *2 (W.D. Wash. Dec. 27, 2018) (concluding "it is more likely than not that the attorneys' fees that may be awarded in this case would exceed the remaining amount required to meet the amount in controversy requirement").

50. Here, Plaintiff seeks attorney's fees under multiple statutes, including RCW 49.52.070, and fees may therefore be considered for purposes of calculating the amount in controversy. *See e.g.,* Complaint ¶ 13.4.

51. Prospective attorneys' fees are properly included in the amount in controversy for purposes of evaluating CAFA jurisdiction. *See Arias v. Residence Inn by Marriott*, 936 F.3d 920,922 (9th Cir. 2019) ("[W]hen a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy."). Under the Ninth Circuit's well-established precedent, twenty-five (25) percent of the common fund is generally used as a benchmark for an award of attorneys' fees. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998), *overruled on other grounds, Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *Barcia v. Contain-A-Way, Inc.*, No. 07cv938-IEG-JMA, 2009 WL 587844, at *5 (S.D. Cal. Mar. 6, 2009) ("In wage and hour cases, '[t]wenty-five percent is considered a benchmark for attorneys' fees in common fund cases.'") (internal quotations omitted); *Lucas v. Michael Kors Inc.*, No. CV 18-1608-MWF (MRWx), 2018 WL 2146403, at *12 (C.D. Cal. May 9, 2018) (collecting cases applying a 25% benchmark in CAFA wage and hour cases).


OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

52. J.B. Hunt has established the total amount in controversy, exclusive of attorneys' fees, is, on the low end, $4,330,500. Plaintiff has not indicated he will seek less than twenty-five (25) percent of a common fund in attorneys' fees. J.B. Hunt denies that any such attorneys' fees are owed to Plaintiff or putative class members. However, solely for purposes of this jurisdictional analysis, J.B. Hunt relies on Plaintiff's allegations that the attorneys' fees are owed. Given the valuation of this matter, the attorneys' fees portion is at least $1,082,625 and supports this removal.

### D. The Rest Break Claim, Meal Period Claim, Willfulness, and Attorneys' Fees Place More than $5 Million in Controversy.

| | |
|---|---|
| Rest Break Claim | $866,100 – $1,299,150 |
| Meal Period Claim | $1,299,150 – $1,948,725 |
| Doubled for Willfulness | $2,165,250 - $3,247,875 |
| Overtime Claims | Not included in this analysis. |
| Expense Reimbursement | Not included in this analysis. |
| Paid Sick Leave Claims | Not included in this analysis. |
| Attorneys' Fees | $1,082,625 – $1,623,937 |
| **Total Amount in Controversy** | **$5.4 – $8.1 million** |

## VI. COMPLIANCE WITH PROCEDURAL REQUIREMENTS

53. In accordance with 28 U.S.C. § 1446(d), J.B. Hunt will promptly file a copy of this Notice of Removal with the Clerk of the Superior Court of Pierce County and will simultaneously provide written notice of the filing of this Notice of Removal to Plaintiff as reflected by the Certificate of Service.

54. In accordance with Local Civil Rule 101(c), J.B. Hunt has filed the Verification that attaches all filings in the State Court Action and verifies they are true and complete copies of all records and proceedings therein.

55. J.B. Hunt has also filed its Corporate Disclosure Statement along with this Notice of Removal.



OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

## VII. CONCLUSION

Having fulfilled all statutory requirements, J.B. Hunt removes this action from the Superior Court of Pierce County, Washington, to the Western District of Washington Court, and requests that this Court assume full jurisdiction over this matter as provided by law. In the event the Court questions the existence of jurisdiction, or Plaintiff moves to remand, J.B. Hunt expressly and respectfully requests the opportunity for a hearing on the issue and to submit further evidence in support of jurisdiction.

Respectfully submitted this 8th day of April, 2026.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: *_/s/ E. Ashley Paynter_*
By: *_/s/ Lauren S. Titchbourne_*
E. Ashley Paynter, WSBA #58857
Lauren S. Titchbourne, WSBA #54565
1201 Third Avenue, Suite 5150
Seattle, WA 98101
Telephone: (206) 693-7057
Facsimile: (206) 693-7058
Email: ashley.paynter@ogletree.com
lauren.titchbourne@ogletree.com

*Attorneys for Defendant*
*J.B. Hunt Transport, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 8, 2026, I served the foregoing NOTICE TO OF REMOVAL OF ACTION TO FEDERAL COURT via the method(s) below on the following parties:

Douglas Han, WSBA #59429
Shunt Tatavos-Gharajeh, WSBA #59424
April Rhéaume, WSBA #57991
JUSTICE LAW CORPORATION
751 North Fair Oaks Avenue, Suite 101
Pasadena, CA 91103
Telephone: (818) 230-7502
Facsimile: (818) 230-7259

Email: dhan@justicelawcorp.com
statavos@justicelawcorp.com
arheaume@justicelawcorp.com
CC's:
Sophia Hanneyan
Flor Gonzalez
Email: shanneyan@justicelawcorp.com
fgonzalez@justicelawcorp.com

*Attorneys for Plaintiff Derek Watson*

☐ by **e-mailing** a true and correct copy to the last known email address of each person listed above.

☒ by **electronic** means through the Court's Case Management/Electronic Case File system, which will send automatic notification of filing to each person listed above.

☐ by **mailing** a true and correct copy to the last known address of each person listed above. It was contained in a sealed envelope, with postage paid, addressed as stated above, and deposited with the U.S. Postal Service in Seattle, Washington.

SIGNED this 8th day of April, 2026, at Los Angeles, California.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/Sandra K. Sandoval
Sandra K. Sandoval, Practice Assistant
sandra.sandoval@ogletree.com